IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**COREY WICKS,**                                              PETITIONER

V.                                                            NO. 2:03CR079-GHD

**UNITED STATES OF AMERICA,**                                 RESPONDENT

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Corey Wicks for a writ of *habeas corpus* under 28 U.S.C. § 2255. The government responded to the petition. The petitioner has replied and a limited evidentiary hearing was held. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* shall be denied.

### A. Facts and Procedural Posture

Since 2001, Drug Enforcement Administration ("DEA") agents and other local law enforcement agents had been investigating a marijuana smuggling operation in Desoto County, Mississippi and the Memphis, Tennessee areas. The investigation revealed that the smugglers would import shipments from Mexico by concealing marijuana in metal collars inside tires on vehicles. Once the shipment was received, the tires were removed and the metal collars opened so the marijuana could be extracted.

In relation to this investigation, agents learned that Wicks along with three codefendants, Renardo Wicks, Mario Davis and Elrekiko King, had been unloading these vehicles since early spring of 2002. Wicks and his counterparts took the vehicles loaded with marijuana to a mobile home located at 455 Mays Road in Tate County, Mississippi. The property was owned by Wicks' grandmother. It was at this location that Wicks and his codefendants would remove the marijuana from the metal collars on the vehicles.

On April 25, 2003, agents were conducting surveillance of the property where they observed Renardo Wicks and three other men unloading marijuana from metal collars. Shortly thereafter,

agents entered the property and arrested Renardo Wicks, Davis and King. Corey Wicks, the Petitioner, left the area as agents arrived. Agents found more than 236 metal collars and 98 pounds of marijuana.[1] When Wicks was eventually arrested and *Mirandized* he admitted that they had been unloading marijuana from vehicles for approximately nine to twelve months. Statements given by codefendants King and Davis revealed that they had been working for and at the direction of Wicks for approximately two to three years.

All Defendants were charged in a two count indictment with conspiracy to possess and distribute marijuana and possession with intent to distribute marijuana. On September 22, 2003, with the assistance of counsel but without a plea agreement, Wicks entered a plea of guilty to both counts. On January 21, 2004, the court overruled objections to the pre-sentence report and sentenced Wicks to 121 months for the conspiracy and 60 months for count two, possession, to run concurrently. Written judgment was entered on January 27, 2004. Wicks' bond was continued for thirty days before he was required to report to the Federal Bureau of Prisons ("BOP") to begin serving his sentence. No direct appeal was taken from the sentence. Rather, Wicks filed the present motion on August 13, 2004.

The instant Section 2255 motion includes five grounds for relief. Wicks' arguments are as follows:

Ground One        Ineffective assistance of counsel based on the

    (a)    Failure to file a notice of appeal;

    (b)    Failure to object to an enhancement based on his leadership role in the offense; and,

    (c)    Failure to pursue a motion to suppress evidence;

---

[1] Each metal collar could contain 12 to 16 pounds of marijuana. Utilizing 236 metal collars multiplied by the least amount of marijuana or 12 pounds, results in 2,832 pounds or 1,284.5 kilograms of marijuana. This amount is inclusive of the 98 pounds of marijuana that the defendants actually possessed when they were arrested.

| | |
|---|---|
| Ground Two | Violation of due process because the indictment did not charge a specific quantity of marijuana; |
| Ground Three | The Sentencing Guidelines are unconstitutional to the extent that a sentence can be calculated on the basis of facts not charged in the indictment or admitted to by Petitioner; |
| Ground Four | The court imposed a sentence in Count II that was excessive under the Guidelines; and |
| Ground Five | Title 21 of the United States Code Section 841(b)(1)(A) and (B) are unconstitutional in light of *Blakely*. |

An evidentiary hearing was held on October 31, 2008, for the singular purpose of determining whether Wicks timely requested that his retained counsel, Attorney David O. Bell, file a notice of appeal.

### B. Standard for Review

After a defendant has been convicted and exhausted or waived any right to appeal, "a court is entitled to presume that [he] stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Accordingly, relief under 28 U.S.C. § 2255 is "reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). Once a sentence of imprisonment has been imposed, the court's authority to reduce or modify the sentence is limited. *United States v. Lopez*, 26 F.3d 512, 515 (5th Cir. 1994). A criminal defendant seeking relief from his conviction or sentence in a motion to vacate pursuant to § 2255 must therefore establish one of the following: (1) his sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence imposed exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995).

3

A Section 2255 petition is not a substitute for an appeal. *United States v. Acklen*, 47 F.3d 739, 741-42 (5th Cir. 1995). When a defendant raises an issue for the first time during collateral review, he must ordinarily show both cause for his procedural default and actual prejudice resulting from the alleged error. *Gaudet*, 81 F.3d at 589. The "cause and actual prejudice" standard is "significantly more rigorous than even the plain error standard applied on direct appeal." *Id.* The procedural bar does not apply, however, to a claim which could not have been raised on direct appeal, such as those alleging ineffective assistance of counsel. *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992).

### C. Discussion

As a threshold matter, Wicks attempts to overcome the procedural default hurdle by arguing that his attorney failed to perfect an appeal as requested. Wicks makes no other attempt to show "cause and prejudice" for his default.

<u>Ground One: Ineffective Assistance of Counsel</u>

When a defendant collaterally attacks his conviction or sentence based on the effectiveness of his counsel, he has the burden of proving by a preponderance of the evidence that his constitutional rights have been violated. *Johnson v. Zerbst*, 304 U.S. 458, 469, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976). In order to demonstrate ineffective assistance of counsel, a defendant must satisfy the two part test of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

A petitioner must satisfy *both* prongs of the *Strickland* test to succeed. *Id.* at 687.

**Failure to File a Notice of Appeal**

Wicks' first ineffective assistance of counsel claim relates to the assertion that his attorney failed to perfect an appeal. As noted *supra*, an evidentiary hearing was held in accordance with

4

*United States v. Tapp*, 491 F.3d 263 (5th Cir. 2007). Wicks, Carla Marie Wicks and Attorney Bell were called as witnesses.

*Summary of the Evidence*

Carla Wicks, Petitioner's wife, testified that immediately following the imposition of sentence, she was standing outside of the courtroom and heard Bell tell Wicks that "he was lucky, because he got the lower end of the sentencing [range], but he was able to file an appeal." Evidentiary Hrg. Tr. 4:4-9 (Oct. 31, 2008). She remembered Wicks responded that he "definitely wants to" pursue and appeal "because ten years is a lot." *Id.* Mrs. Wicks could not recall any specific reaction or statements from Bell but she was left with the belief that an appeal would be forthcoming. *Id.* at 4:14-22. Following sentencing, Wicks was allowed to remain on bond and ordered to report to the BOP thirty days later. Mrs. Wicks testified that she did not remember any other details about the sentencing because she was so excited her husband would get to come home before beginning to serve his sentence. *Id.* at 5:10-21. In fact, Mrs. Wicks wrote a note to Bell thanking him for helping convince the court to allow her husband to report rather than being taken into custody immediately. *Id.* at 5:22-25 to 6:1-4. Mrs. Wicks did not recall any contact between Bell and her husband at any time following the imposition of sentence. *Id.* at 6:5-25 to 7:1-5.

Wicks testified that immediately following sentencing, he was outside the courtroom and told Bell that he wanted to pursue an appeal. *Id.* at 9:19-25 to 10:1-5, 11:1-4, 10-13. Wicks stated, "I assumed [Bell] filed" a notice of appeal. *Id.* at 13:19-21, 14:17-20. Wicks acknowledged that he had hired Bell and that the representation did not include an appeal. *Id.* at 11:16-18. But, Wicks admitted he never contacted Bell after the sentencing. *Id.* at 11:14-15, 12:19-25, 13:3-8, 14:9-20.

Next, Attorney Bell took the stand and attested to his twenty plus years of experience in the area of federal criminal defense. As for Wicks, Bell limited his representation of Wicks in an engagement letter dated June 11, 2003. *Id.* at 16:16-25; Govt's Ex. 2. The letter, sent to Wicks shortly after he was indicted, detailed the terms of the attorney-client relationship such as fees and "included anything up to and including trial but did not include any appeal to a higher court." *Id.*

17:15-19. Bell recalled appearing with Wicks at the sentencing hearing and speaking with him in the hallway afterwards. *Id.* at 19:1-6. Bell, however, did not recall any conversation with Wicks regarding an appeal. *Id.* at 19:20-25, 20:1-24, 23:1-14. Bell further explained that if Wicks had hypothetically asked to appeal, Bell would have initiated contact with Wicks. *Id.* at 21:14-24. In other words, regardless of any contractual limitation, Bell would have had an obligation to file a notice of appeal if one had been requested. *Id.* at 21:25 to 22-1-7.

*The Applicable Law*

The *Strickland* standard for ineffective assistance of counsel as identified *supra* applies to Wicks' claim. The failure to file a notice of appeal is *per se* ineffective assistance of counsel, with or without a showing that the appeal would have merit. *Roe v. Flores-Ortega*, 528 U. S. 470, 483-86, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). When an attorney fails to file a notice of appeal when requested to do so, the defendant need not demonstrate that he would have been able to raise meritorious issues on appeal. *Id.* at 477-78. Instead, the defendant must only demonstrate that there is a reasonable probability that but for counsel's failure, he would have timely appealed. *Id.* at 484, 486. If the petitioner is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and the petitioner will be entitled to an out-of-time appeal. *Tapp*, 491 F.3d at 266; *see also United States v. Taylor*, No. 05-60820, 270 Fed. Appx. 363, 366, (5th Cir. Mar. 25, 2008) (remanding for an evidentiary hearing as to the notice of appeal and implying that the requested appeal can be made by the defendant or a family member); *United States v. Hereford*, No. 06-11004, 242 Fed. Appx. 251, 252 (5th Cir. Sept. 18, 2007) (same).

*Analysis*

In the case *sub judice*, it is above dispute that no appeal was taken from Wicks' sentence. Accordingly, Wicks must demonstrate by a preponderance of the evidence that he did, in fact, timely request Attorney Bell to perfect an appeal. Based on the testimony presented at the evidentiary hearing as well as the record in this case, Wicks has not satisfied his burden of proof.

The court had an opportunity to view the demeanor and testimony of the witnesses and weigh the credibility of Mrs. Wicks, the Petitioner and Bell. The court simply does not find Wicks' evidence to be credible. First, Wicks has a strong motivation to fabricate or at least embellish his story. Second, Wicks' actions or inactions in the weeks following his sentencing are inconsistent with his claim that he requested an appeal. After the imposition of his sentence, Wicks was allowed to return to his home for thirty days as opposed to immediately being taken into custody. Understandably excited about spending time with his family, Wicks never contacted Attorney Bell regarding the alleged requested appeal. Despite the fact that he knew Bell had not been retained to pursue any appeal and that their agreement specifically excluded appeal, Wicks never had any discussion with Bell regarding additional fees, costs or the procedure for securing an appeal.

Likewise, Mrs. Wicks confirms that there was no contact between Bell and her husband in the weeks after sentencing. Bell's testimony was similar in that he did not recall any conversations regarding an appeal. Furthermore, the only contact Bell had regarding Wicks was the thank-you note from Mrs. Wicks. The note did not mention an appeal or inquire about additional fees required for such a course of action. The lack of any attempted communication with Bell following sentencing is not indicative of a defendant who had requested his retained attorney pursue an appeal. To the contrary, Wicks' inaction substantiates Bell's recollection that there was never any conversation much less an agreement that a notice of appeal would be filed.

Given Bell's years of experience and more than capable representation, it is unlikely that he would have been asked to perfect an appeal but neglected to abide by his client's wishes. Assuming for a moment that he did fail to file the requested appeal, Wicks' actions were inconsistent with defendant whose hopes of an appeal had been dashed. Neither he nor his wife never contacted Bell to inquire about the purported appeal even when it was apparent that no appeal had been filed. Rather, Wicks had no further communication with Bell and chose to file the instant petition. Wicks' actions or lack thereof following the imposition of sentence do not comport with his current claim

of ineffective assistance of counsel. The court is unpersuaded that Wicks ever asked Bell to pursue an appeal. Therefore, the claim is denied.

### Failure to Object to the Leadership Role

Wicks argues that Attorney Bell was ineffective because he failed to object to a two-point guideline enhancement based on Wicks' participation as a leader in the offense. Wicks' claim, however, is contradicted by the record. At the sentencing hearing, the only objection to the presentence report was related to the "two-level enhancement characterizing [Wicks] as an organizer and leader, manager or supervisor." Sent. Hrg. Tr. 2:11-25 to 4:24 (Jan. 21, 2004). Clearly, Attorney Bell did not fail to object to the enhancement. Therefore, he cannot be considered deficient simply because the objection was overruled. Accordingly, Wicks' assertion is denied.

### Failure to Pursue a Motion to Suppress

Next, Wicks contends that his attorney was ineffective for failing to file a motion to suppress evidence. Wicks avers that the search warrant issued for his grandmother's property was not supported by probable cause. The argument continues, that if Attorney Bell could have filed a successful motion to suppress on this basis resulting in the exclusion of evidence then ultimately a guilty plea would not have been entered.

The court first notes that Wicks pled guilty to the indictment without a plea agreement on the day trial was to commence. "A plea of guilty admits all the elements of a formal criminal charge and waives all non-jurisdictional defects in the proceedings leading to conviction. The plea waives claims of governmental misconduct during the investigation and improper motives for prosecution." *United States v. Cothran*, 302 F.3d 279, 285-86 (5th Cir. 2002). Wicks makes no argument suggesting that he did not waive his right to challenge the search of his grandmother's property when he pled guilty. Thus, the court is not obligated to address the merits of this claim that was waived by acceptance of the guilty plea.

Waiver notwithstanding, "the failure to file a suppression motion does not constitute per se ineffective assistance of counsel." *Kimmelman v. Morrison*, 477 U.S. 365, 384 106 S. Ct. 2574,

91 L. Ed. 2d 305 (1986). The Supreme Court has refined the prejudice inquiry in the context of ineffective-assistance claims based on counsel's failure to file a motion to suppress:

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable portability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Id.* 477 U.S. at 375. The inquiry turns on whether a hypothetical motion to suppress would have been successful. *United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987).

As noted *supra*, Wicks and his codefendants were indicted following a lengthy investigation of a major marijuana smuggling operation. In this case, the predominate amount of evidence was obtained from Wicks' grandmother's property where he and his codefendants had been removing marijuana from metal collars in vehicle tires. Also, other evidence would have likely been elicited from the investigators who had been monitoring Wicks and his codefendants' activities for months. Wicks suggests that his attorney should have filed a motion to suppress based upon lack of probable cause to search his grandmother's property. Wicks concludes that such a motion would have been successful. The argument, however, must fail.

Wicks has no standing to challenge the search upon property that he did not own. *Rakas v. Illinois*, 439 U.S. 128, 99 S. Ct. 421, 425, 58 L. Ed. 2d 387 (1978). Standing is a personal right that cannot be asserted vicariously. *United States v Pierce*, 959 F.2d 1297, 1303 (5th Cir. 1992). In order to have standing under the Fourth Amendment to challenge a warrantless search[2], a defendant must show (1) an actual subjective expectation of privacy with respect to the place being searched or items being seized, and (2) that the expectation is one that society would recognize as reasonable. *United States v. Lee*, 898 F.2d 1034, 1037-38 (5th Cir. 1990). The Fifth Circuit has recognized that a privacy interest can be established in the residence of another when that interest "is based on a visit

---

[2] It is not clear whether a warrant was issued prior to the agents entering the property or following the arrest of the codefendants. The court, therefore, applies the more stringent standard for warrantless searches.

which represents a longstanding social custom that serves functions recognized as valuable by society," that is, the custom of "staying overnight in the home of another." *United States v. Vega*, 221 F.3d 789, 797-98 (5th Cir. 2000).

Here, Wicks had no possessory interest in the property where the search was conducted. Despite the claim that he had a right to legitimately be on the premises, Wicks had no demonstrable right to exclude others from the property. Rather, he was merely a visitor on his grandmother's land. Wicks makes no claim of being entitled to privacy as an overnight guest. Although he may have had a subjective expectation of privacy, any such expectation is not one which society would recognize as reasonable. *United States v. Gomez*, 276 F.3d 694, 697 (5th Cir. 2001). Thus, Wicks would have lacked standing to mount a Fourth Amendment challenge to the search of his grandmother's property. *See Minnesota v. Wayne Carter*, 525 U.S. 83, 119 S. Ct. 469, 142 L. Ed. 2d 373 (1998) (defendants in lessee's apartment with her consent for short period solely for purpose of bagging cocaine, had no legitimate expectation of privacy to contest warrantless entry by police who observed drug activity through gap in closed blind). "[A] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless" it results in "obvious unfairness." *Crane v Johnson*, 178 F.3d 309, 314 (5th Cir. 1999). As a result, his attorney's performance cannot be considered deficient for failing to pursue a meritless motion. Wicks' claim, therefore, is denied. *See United States v. Bradford*, No. 05-30070, 185 Fed. Appx. 422 (5th Cir. Jun. 21, 2006) (counsel did not have cause for objecting to the search).

<u>Ground Two: Violation of Due Process</u>

In Ground Two, Wicks argues that the indictment was defective because there was no specific amount of marijuana charged. The two count indictment charged Wicks with (1) conspiracy to possess with intent to distribute in excess of 1,000 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2) possession with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1). Wicks contends that his involvement was "less than the full life of the charged conspiracy and it was error to [attribute to him] the total amount of

10

marijuana." At his change of plea hearing, however, Wicks conceded that the conspiracy involved more than 1,000 kilograms of marijuana. Plea Hrg. Tr. 10:25 to 11:1, 15:12-25 to 16:3 (Sept. 22, 2003).

An indictment is sufficient if it (1) contains the elements of the offense charged; (2) fairly informs a defendants of the charge against him; and (3) enables him to plead acquittal or conviction in bar of future prosecutions for the same offense. *United States v. Hagmann*, 950 F.2d 175 (5th Cir. 1991). The validity of an indictment depends on "whether it conforms to minimal constitutional standards." *United States v. Webb*, 747 F.2d 278, 284 (5th Cir. 1984). A defective indictment is not a matter appropriate for federal habeas relief unless it can be shown that the indictment was "so fatally defective that under no circumstances could a valid conviction result from the facts provable under the indictment." *Johnson v. Puckett*, 930 F.2d 445, 447 (5th Cir. 1991). A defective indictment does not deprive a court of jurisdiction. *United States v. Cotton*, 535 U.S. 625, 631, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002).

Furthermore, the United States Supreme Court held in *Apprendi*, that any fact, other than the fact of a prior conviction, which increases the penalty for a crime beyond the prescribed statutory maximum, must be alleged in the indictment, submitted to the jury and proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). *Apprendi*, however, requires reversal of a sentence only in those cases where the sentence imposed by the court exceeds the statutory maximum. *United States v. Keith*, 230 F.3d 784, 787 (5th Cir. 2000).

Wicks' argument fails for two reasons. Wicks was sentenced to 121 months imprisonment the lowest possible sentence under the Guidelines and well below the statutory maximum of life imprisonment. *See* 21 U.S.C. §§ 841 (b)(1)(A) and (b)(1)(D). Thus, the rule announced in *Apprendi* has not been violated. *United States v. Moreci*, 283 F.3d 293, 299 (5th Cir. 2002). Second, the absence of a specific drug quantity does not render the indictment defective. In fact, the Supreme

Court rejected this very argument in *Cotton* when it held that a "detectable amount" of crack as charged in the indictment was sufficient to withstand scrutiny. *Cotton*, 535 U.S. at 631.

The indictment *sub judice* was appropriately detailed containing each element of the offense charged and fairly informing Wicks of the possible maximum sentence he faced. *See United States v. Olness*, 9 F.3d 716, 717 (8th Cir. 1993) (despite fact that indictment did not allege the specific amount of cocaine base involved did not invalidate the indictment; rather drug quantity is not an element of the offense but a sentencing factor). Since the law does not require that a precise quantity of drugs be contained in the indictment there are no grounds to object or challenge the drug quantity range contained in the indictment. Therefore, Ground Two does not provide an appropriate basis for habeas relief.

### Ground Three: The Sentencing Guidelines

Wicks argues that the Sentencing Guidelines are unconstitutional to the extent that a sentenced can be imposed on facts which are neither charged nor alleged in the indictment or admitted to by the defendant. Specifically, Wicks cites as error that the court characterized him as a leader of the conspiracy in violation of the Sixth Amendment–an *Apprendi* challenge.

As noted above, *Apprendi* requires that any fact, other than the fact of a prior conviction, which increases the penalty for a crime beyond the *prescribed statutory maximum*, must be alleged in the indictment, submitted to the jury and proven beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Importantly, Wicks' sentence was not outside the statutory maximum. In fact, he was given the lowest possible sentence under the, then mandatory Guidelines, and one month more than the lowest statutory minimum sentence under 21 U.S.C. § 841(b)(1)(A).[3] Thus, the sentence comported with *Apprendi* and the law as it existed at the time Wicks was sentenced.

---

[3] The leadership adjustment resulted in Wicks receiving a two level increase in his total offense level under the Guidelines. U.S.S.G. § 3B1.1(c). After another adjustment for acceptance of responsibility by tendering a guilty plea, Wicks total offense level was a 32. U.S.S.G. § 3E1.1(a). With an offense level of 32 and a criminal history category of I, Wicks' guideline range was 121 to 151 months imprisonment. If he had not received the leadership adjustment, Wicks' total offense level would have been 30 and his criminal history category would have been unchanged resulting in a Guidelines range of 97 to 121 months imprisonment.

12

To the extent Wicks is attempting to assert a claim based on *Blakely* or *Booker*, this claim to is unavailing. *Blakely* held, that in the context of mandatory Sentencing Guidelines, the Sixth Amendment right to a jury trial prohibits judges from enhancing criminal sentences based on facts other than those decided by the jury or admitted by the defendant. *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (Jun. 24, 2004). The following year, a majority of the Supreme court extended to the federal Sentencing Guidelines the rule that pursuant to the Sixth Amendment, any fact, other than the fact of a prior conviction, "which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *United States v. Booker*, 543 U.S. 220, 244, 125 S. Ct. 738, 160 L. Ed. 2d 621 (Jan. 12, 2005) (a separate majority excised the mandatory statutory language of the federal Guidelines rending them advisory).

First, Wicks admitted to his leadership role in the smuggling conspiracy when he agreed with the factual summary offered by the Government.[4] *See* Plea Hrg. Tr. 12: 9-25 to 13:1-25. Furthermore, the sentence does not implicate *Blakely* because his sentence did not exceed the statutory maximum–life imprisonment. *United States v. Lewis*, 476 F.3d 369, 391 (5th Cir. 2007). Finally, the Fifth Circuit Has held that *Blakely* does not apply retroactively for purposes of post-conviction relief pursuant to 28 U.S.C. § 2255. *United States v. Gentry*, 432 F.3d 600, 604 (5th Cir. 2005). Prisoners challenging judgments that became final before January 12, 2005, may not claim relief pursuant to *Booker*. *Id.* Wicks was sentence in January 21, 2004. Judgment was entered on January 27, 2004. As discussed *supra*, Wicks did not pursue an appeal. Therefore, his conviction became final ten days after entry of judgment on February 10, 2004–well before the *Blakely* and *Booker* decisions were announced. Accordingly, for all the foregoing reasons, Wicks' argument is without merit.

---

The Government offered: Corey Wicks "had been directing the operation," Plea Hrg. 12:9-10; the codefendants "would help distribute the marijuana for Corey Wicks," *Id.* at 13:6-8; "the men were hired by Corey Wicks . . . he would pay the men in marijuana and an extra hundred dollars," *Id.* at 13:11-14; and, "Corey Wicks would call [the codefendants] and tell them . . . where to go pick up a vehicle," *Id.* at 13:21-23.

Ground Four: Excessive Sentence

Wicks argues that the court imposed a sentence in Count Two of the indictment that was excessive under the Guidelines. Count Two charged Wicks with possession with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1). For this charge his sentencing exposure was not more than five years imprisonment under § 841(b)(1)(D). Wicks received 60 months imprisonment–the statutory maximum– to be served concurrently with the 121 months he received as to Count One.

As previously discussed, Wicks was sentenced prior to *Blakely* and *Booker* while the Guidelines were still considered mandatory. At the time, § 3D1.1 of the Sentencing Guidelines[5] provided that when a defendant has been convicted of more than one count, the court shall group related counts and determine a combined offense level. Counts are related when they involve "substantially the same harm." U.S.S.G. § 3D1.2. Counts involve substantially the same harm when "the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." U.S.S.G. § 3D1.2(d).

Although Count Two did involved less than 100 pounds of marijuana as Wicks argues, the Sentencing Guidelines required that Counts One and Two be combined to determine the total quantity of marijuana and the appropriate offense level. Thus, after grouping Counts One and Two for violations of 21 U.S.C. §§ 846 and 841(a)(1) involving a total drug quantity of 1,284.5 kilograms[6], the drug quantity table of U.S.S.G. § 2D1.1(a)(3)(c)(4) yields a base offense level of 32. Therefore, Wicks' sentence, based upon a total offense level of 32, was calculated properly and his claim will not support habeas relief. *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994) (a

---

[5] The 2002 edition of the Guidelines Manual was used to calculate Wicks' sentence.

[6] Recall that the total drug quantity is derived from the number of metal collars seized which were used to transport the marijuana inclusive of the 98 pounds of marijuana actually seized.

14

district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under § 2255).

Ground Five: Constitutionality of 21 U.S.C. 841(b)(1)(A) and (B)

Wicks last asserts that 21 U.S.C. § 841 is unconstitutional under *Apprendi*. The Fifth Circuit Court of Appeals has rejected this argument in *United States v. Slaughter*, 238 F.3d 580, 582 (5th Cir. 2000). This Circuit continues to adhere to this ruling even after *Booker*. *See United States v. Garcia*, 470 F.3d 1143, 1146 (5th Cir. 2006); *United States v. Gonzalez*, No. 04-41676, 145 Fed. Appx. 938, 939 (5th Cir. Aug. 17, 2005); *United States v. Echavarria*, No. 04-41047, 138 Fed. Appx. 678, 680 (5th Cir. Jul 12, 2005). Accordingly, Wicks' claim is foreclosed by precedent.

*E. Conclusion*

For all the foregoing reasons, Wicks' motion to vacate will be denied. The claims neither singularly or collectively are sufficient to warrant federal habeas relief.

A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 26 day of November, 2008.

_____
SENIOR JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI